IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SEDRICK D. MITCHELL, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Case No. 1:23-cv-01094-JDB-jay |
| WARDEN DEMETRIC GODFREY, | ) ) ) | |
| Respondent. | ) ) | |

ORDER DENYING PETITIONER'S MOTION TO SUPPLEMENT RECORD,
DENYING PETITIONER'S MOTION TO FILE SECOND AMENDED PETITION,
GRANTING RESPONDENT'S MOTION TO DISMISS,
DISMISSING AMENDED § 2254 PETITION WITH PREJUDICE,
DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Before the Court is the amended pro se petition under 28 U.S.C. § 2254 (the "Amended Petition") of the Petitioner, Sedrick D. Mitchell, Tennessee Department of Correction prisoner number 275159, an inmate incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee.  (Docket Entry ("D.E.") 1.)  The Respondent, Warden Demetric Godfrey, has moved to dismiss the Amended Petition.  (D.E. 24.)

Petitioner also filed a motion to supplement the record (D.E. 27), to which Godfrey responded in opposition (D.E. 28), and Mitchell replied (D.E. 29).  For the reasons that follow, the motion to supplement the record is DENIED.

The inmate has filed a motion for leave to file a second amended petition (D.E. 31), also opposed by the Respondent (D.E. 38). Petitioner did not file a reply, and the time to do so has expired. (*See* D.E. 37.) As discussed below, the motion for leave to amend is DENIED.

The Court GRANTS Respondent's motion to dismiss and DISMISSES the Amended Petition because Petitioner's claims are either inadequately plead or procedurally barred.

## BACKGROUND

A. Procedural History.

On December 9, 2016, a jury convicted Mitchell[1] of the sale and delivery of 0.5 grams or more of cocaine within 1,000 feet of a school and of simple possession of cocaine. (D.E. 22-2 at PageID 407, 412, 418, 428.) The state trial court sentenced him as a career offender to a total effective sentence of sixty years' imprisonment. (*Id*. at PageID 437-40.)

Defendant filed a direct appeal to the Tennessee Court of Criminal Appeals ("TCCA"), arguing, among other things, that the evidence was insufficient to support his convictions. *See State v. Mitchell,* No. M2017-00825-CCA-R3-CD, 2018 WL 5416033. at **2-5 (Tenn. Crim. App. Oct. 29, 2018). The TCCA affirmed the judgments of the state trial court. *Id*. at *5. Defendant did not seek discretionary review by the Tennessee Supreme Court.

Mitchell filed a pro se petition for state post-conviction relief on May 23, 2019, alleging that his trial and appellate counsel were ineffective on various grounds. (D.E. 22-19 at PageID 1373-1432, 1380-1412.) On October 14, 2019, his amended petition was filed through appointed counsel.[2] (*Id*. at PageID 1456-62.)

---

[1] In its discussion of the underlying criminal case, the Court will sometimes refer to Mitchell as the "Defendant."

[2] Defendant filed an unnamed document on October 9, 2019, averring alleged "additional grounds for post-conviction relief." (D.E. 22-20 at PageID 1528-56.) The State moved to strike the document because Mitchell was represented by appointed counsel at the time of filing. (D.E.

The state post-conviction trial court held an evidentiary hearing on Mitchell's pro se petition and denied relief in a written order. (D.E. 22-20 at PageID 1617-30, D.E. 22-1 at PageID 1644-1833, 1855-2025.)  The TCCA affirmed the denial of habeas relief. *Mitchell v. State,* No. M2021-00783-CCA-R3-PC, 2022 WL 2348217, at *11 (Tenn. Crim. App. June 29, 2022).  The Tennessee Supreme Court denied Defendant's application for permission to appeal on November 16, 2022. (D.E. 22-28.)

Mitchell filed his initial pro se § 2254 petition herein on May 24, 2023 (the "Petition"). (D.E. 1.)  On preliminary review, the Court ordered him to file an amended petition on the district's official form. (D.E. 7.)  The Amended Petition was filed on November 30, 2023 (D.E. 11), and raises the following claims:

> Claim 1:  "Trial counsel failed to obtain the [confidential informant's] criminal history prior to trial and after trial.  Prosecutorial misconduct for not providing defense with criminal history of [the State's] key witness.  Trial court erred [in] denying [Petitioner] a criminal background check [on the confidential informant] when the defense moved the court for it."  (D.E. 11-1 at PageID 87.)
>
> Claim 2:  Trial counsel provided ineffective assistance by "not obtaining the name of the [confidential informant] prior to trial.  [There] was no way trial counsel could investigate without the name of [the confidential informant].  It was prosecutorial misconduct for the State not to give up the [confidential informant's] name after repeated demands.  It was error for the [state post-conviction trial court] not to find ineffective [assistance of] counsel or prosecutorial misconduct."  (*Id*. at PageID 88.)
>
> Claim 3:  Petitioner alleges that trial counsel was ineffective "prior to trial and after trial for not investigating all possible defenses."  (D.E. 11 at PageID 75.)  In particular, Petitioner alleges that trial counsel "refused to investigate" the confidential informant's identity and criminal history prior to trial.  (D.E. at 11-1 at PageID 90.)

The Court ordered Godfrey to respond to the Amended Petition.  (D.E. 17.)  Respondent

---

22-20 at 1563.)  At the evidentiary hearing, Defendant stated that he wanted the court to strike appointed counsel's second amended petition and proceed with his pro se petitions.  (*Id*. at PageID 1617, D.E. 22-21 at PageID 1663-64.)  The state post-conviction trial court granted the request and Mitchell proceeded pro se.  (*See* D.E. 22-20 at PageID 1618.)

filed a motion to dismiss and the state court record on December 30, 2024. (D.E. 22, 24.) Respondent argues in the dispositive motion that Claims 1 and 2 should be dismissed because they are insufficiently plead and that Claim 3 is procedurally defaulted and barred from habeas review.

B. Trial Proceedings.

In its decision affirming Mitchell's convictions and sentences, the TCCA recited the facts and evidence presented at trial as follows:

> Drug Task Force Agent Jose Ramirez, of the Marshall County Sheriff's Department, testified that he and other agents met with the confidential informant ("C.I.") on February 6, 2015, to arrange a controlled purchase of cocaine from Defendant. The C.I. told Defendant that he had a "bill," meaning that he wanted to purchase $100 worth of cocaine. Defendant agreed to meet the C.I. at a local Goodwill store.
>
> ***
>
> After 45 minutes to an hour of waiting for Defendant to show up, the meeting place was changed to the America's Best Value Inn, which was located behind the Goodwill. Agent Ramirez followed the C.I. to that location, and the other agents relocated to conduct surveillance. Agent Ramirez testified that he saw the C.I. and Defendant "go into a breezeway" together, where the exchange took place. Agent Ramirez testified that he did not see Defendant's face because it was covered by a "zipped-up hoodie." After the exchange, the C.I. met Agent Ramirez at a pawn shop one block away from the motel. The C.I. gave Agent Ramirez a plastic bag containing crack cocaine.
>
> ***
>
> The State introduced satellite photos, using the Tennessee Bureau of Investigation ("TBI") mapping software, showing that the location of the controlled buy was within 1,000 feet of the Thomas Magnet School. A special agent with the TBI's crime lab testified that the substance recovered from the controlled buy was determined to be 1.05 grams of cocaine. The substance recovered during the search of Defendant's motel room was determined to be 0.45 grams of cocaine.
>
> The C.I. acknowledged that he was "a drug addict," and he testified that he contacted the drug task force about becoming a confidential informant. The C.I. testified that on February 6, 2015, he called Defendant to arrange a meeting for the purchase of cocaine. He testified that the exchange took place in the breezeway of the motel, and he identified Defendant as the person to whom he gave the $100 provided by Agent Ramirez in exchange for a bag of crack cocaine. On cross-

4

> examination, the C.I. acknowledged that he was convicted in Carroll County in 2006 of two counts of attempted possession of less than 0.5 grams of cocaine for resale. He also acknowledged that he was on parole at the time of the controlled buy in this case. The C.I. also acknowledged that he was compensated $100 by the drug task force for his participation in the controlled buy.

*Mitchell*, 2018 WL 5416033, at **1-2.

C. Post-Conviction Proceedings.

The TCCA summarized the evidence presented at the hearings on Mitchell's petition for state post-conviction relief thusly:

> Trial counsel testified that he was appointed to the petitioner's case in June 2016, approximately six months prior to trial, after several attorneys were permitted to withdraw. In preparing the petitioner's case, trial counsel spoke to former counsel, reviewed all of the evidence provided in the case file, conducted both legal and factual research, and spoke to a Drug Task Force agent. Trial counsel stated that the facts of the petitioner's case were "[n]ot complex at all . . . . It was literally a discreet, single act, which occurred within moments before the arrest." According to trial counsel, the facts showed the petitioner participated in a controlled drug buy that was supposed to take place at a Goodwill. However, when the petitioner did not meet the C.I. at the Goodwill, the controlled buy was moved to an America's Best Value Inn. Recorded phone calls between the petitioner and the C.I. verified the change in venue of the controlled buy.
>
> ***
>
> Trial counsel discussed the C.I. at length, stating he "press[ed] for the name of the C.I." throughout his representation of the petitioner. About five months prior to trial, trial counsel made an oral motion "to require the State to provide criminal background information on the [C.I.]" and filed a written "Motion to Compel the Identity of the Confidential Informant." The trial court granted the written motion, noting within its order that the State "announced that the identity of the [C.I.] was disclosed to [the petitioner's] previous counsel" and "that there was no issue with disclosing said identity to present counsel." The trial court denied the oral motion but ordered the State to provide trial counsel with the C.I.'s criminal history if the State had access to it. Both of the trial court's orders were entered into evidence.
>
> Despite his attempts to learn the C.I.'s name, trial counsel did not receive the name until after the start of trial. Upon learning the name, the trial court allowed trial counsel to investigate the C.I.'s criminal history in the clerk's office. Trial counsel discovered . . . that [the C.I.] carried two, felony drug convictions. Trial counsel used this information during trial, stating he successfully impeached the C.I. with the two[] prior convictions, the fact that the C.I. was on parole at the time of trial,

5

and the fact that the C.I. was a paid informant. Trial counsel stated that not knowing the name of the C.I. was not such an impediment that he "could not perform to an adequate standard."

Trial counsel's testimony then turned to the petitioner's allegation that trial counsel was ineffective for failing to discover the C.I.'s complete criminal history which included, according to the petitioner, convictions for second degree murder, burglary, and theft. Trial counsel acknowledged that he did not know that the C.I. had a second degree murder conviction at the time of trial but stated he successfully impeached the C.I. during cross-examination because "all that really mattered is he had a felony conviction[,] and we got that before the jury." Trial counsel did not believe the State's entire case relied on the testimony of the C.I. However, he acknowledged that the C.I.'s testimony "was certainly a pivotal aspect of it." Finally, in relation to the C.I.'s criminal history and the petitioner's case, trial counsel stated: "The fact the [C.I.] may have had a murder conviction would not have any bearing on the fact [the petitioner] had [the C.I.'s] five $20 bills in [his] pocket when [he was] arrested."

\*\*\*

Regarding the direct appeal, trial counsel stated he did not raise any issues related to the C.I.'s criminal history, specifically the second degree murder conviction, because he did not think it was relevant. The petitioner presented trial counsel with a TBI report on the C.I.'s criminal history, which listed the C.I.'s prior convictions for second degree murder, burglary, and theft, and asked if trial counsel believed the petitioner would have received a not guilty verdict had he known the complete criminal history at trial. Trial counsel responded, "[n]o, not a chance." Trial counsel also stated that this issue was "purely speculative" because "there was near continuous observation of the alleged transaction[,] and it was under wire the entire time." This concluded the first portion of the post-conviction hearing.

During the second portion of the post-conviction hearing, the petitioner testified on his own behalf primarily by reading portions of the trial transcript into the record.

\*\*\*

Similar to trial counsel, the petitioner's testimony focused on issues related to the C.I. and trial counsel's handling of the same. The petitioner testified that he never received the C.I.'s name and that he would have considered pleading guilty had the name been disclosed prior to trial. The petitioner testified that he believed trial counsel should have "objected and asked for a mistrial or a continuance" after the State indicated their intent to call the C.I. because trial counsel was not prepared to effectively cross-examine him.

Regarding the C.I.'s criminal history, the petitioner stated the jury was misled because trial counsel only impeached the C.I. with two[] prior drug convictions.

6

> As a result, the petitioner stated the jury was "under the impression [the C.I.] was on probation for drugs, [when] [the C.I.] was on probation for murder." The petitioner testified that trial counsel should have been able to question the C.I. about why he was on probation.
>
> ***
>
> The petitioner then testified that trial counsel was ineffective "for not filing a motion to sanction the State for failing to provide the name of the C.I. prior to trial." The petitioner testified he was "ambushed" at trial as a result and requested a new trial in order to be able to impeach the C.I. with the prior second degree murder, theft, and burglary convictions.
>
> Regarding the motion for a new trial, the petitioner testified that trial counsel was ineffective for not stating in the motion that they did not receive the name of the C.I. until after trial had begun. [The petitioner] also argued that trial counsel was ineffective after trial for failing to perform a follow-up investigation into the C.I.'s criminal history. The petitioner asserted trial counsel "came to the [m]otion [f]or [a] [n]ew [t]rial [hearing] with nothing."
>
> During cross-examination, the petitioner acknowledged that trial counsel elicited testimony from the C.I. regarding his two[] prior felony drug convictions, that he was on parole when he engaged in the controlled buy with the petitioner, that he was on parole during trial, and that he was being paid for his work with the Drug Task Force. The petitioner admitted, however, that he did not have certified copies of the C.I.'s prior convictions.

*Mitchell*, 2022 WL 2348217, at **3-5.

## LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "requires habeas petitioners to exhaust their claims in state court before turning to a federal court for relief." *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing 28 U.S.C. § 2254(b)(1)). "Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022). To be properly exhausted, each claim must have been "fairly present[ed]" to the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). Fair presentation requires the prisoner to provide the state courts with the "opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d

7

410, 414-15 (6th Cir. 2009). "The prisoner must present to the state courts the same claim under the same theory [and] make the state courts aware of the federal nature of the claim." *Davis v. Jenkins*, 115 F.4th 545, 554 (6th Cir. 2024) (internal quotation marks and citations omitted).

If a prisoner fails to properly exhaust a claim in state court and state law bars proper exhaustion, the prisoner has technically exhausted the claim through procedural default because "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (quoting § 2254(b)). To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the state trial court and to the TCCA on appeal. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); Tenn. Sup. Ct. R. 39.

A petitioner may overcome procedural default by showing "cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006). The United States Supreme Court has also recognized a "miscarriage of justice" exception to the procedural default rule. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995). This exception only applies in the "extraordinary case" and requires a petitioner to establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 321. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

Where the prisoner's claim was "adjudicated on the merits" in state court, habeas relief shall not be granted unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts" based on evidence presented in state court. 28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to federal law when it reaches an opposite conclusion

on a question of law that the Supreme Court previously decided or if the state court confronts materially indistinguishable facts from a relevant Supreme Court precedent and reaches an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "[A] run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id*. at 406.

An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. An "unreasonable application" of federal law is one "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 100, 103 (2011).

## ANALYSIS

A. <u>Petitioner's Motion to Supplement the Record.</u>

Mitchell seeks to supplement the record with various pleadings and excerpts from state court transcripts, identified as Exhibits A through F. (D.E. 27-1, 27-2.) Many of the documents the motion seeks to add to the record are already included in the state court record:

| Exhibit B | D.E. 22-1 at PageID 221-22; 230 |
| --- | --- |
| Exhibit C | D.E. 22-1 at PageID 276-87 |
| Exhibit D | D.E. 22-1 at PageID 298-99 |
| | D.E. 22-2 at PageID 319, 321 |
| Exhibit E | D.E. 22-6 at PageID 667 |
| Exhibit F | D.E. 22-5 at PageID 532-33, 534-35, 552 |

The only document Petitioner attaches to his motion that was not included in the state court record

9

is Exhibit A, identified as a motion for discovery filed by his original trial counsel. (D.E. 27-1 at PageID 2263; D.E. 27-2 at PageID 2269-76.)

The inmate states in his motion that he presents Exhibits A through F "as evidence and proof in support of his claim that the State did knowingly and intentionally withhold the name and criminal history [of the confidential informant] and evidence favorable to Petitioner after repeated demands." (D.E. 27 at PageID 2261.) He argues that "[t]he withholding of this exculpatory evidence/*Brady*[3] material [caused] [him] to get convicted and sentenced to 60 years." (*Id*.) With the benefit of liberal construction, it appears that he seeks to supplement the state court record with the attached exhibits to support Claim 2 of the Amended Petition.

Mitchell does not cite to any authority authorizing the Court to supplement the record with evidence outside the state court record. Generally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Habeas Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") authorizes the court "to expand the record" with "additional materials relating to the petition." Habeas Rule 7(a). "The decision of whether to expand the record, however, is within the sound discretion of the district court." *West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008).

Motions to expand the record under Habeas Rule 7 must satisfy the requirements of 28 U.S.C. § 2254(e)(2), although that provision is expressly directed at evidentiary hearings. *See Holland v. Jackson*, 542 U.S. 649, 653 (2004) (per curiam) ("Those same restrictions [of § 2254(e)(2)] apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing.").

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

Petitioner contends in Claim 1 that the State committed prosecutorial misconduct by "not providing [the] defense with [the identity and] criminal history" of [the confidential informant.] (D.E. 11-1 at PageID 87.) He alleges as part of Claim 2, that "[i]t was prosecutorial misconduct for the [S]tate not to give up the [confidential informant's] name after repeated demands." (*Id*. at PageID 88.) As discussed below, Claims 1 and 2 are insufficiently pleaded under Habeas Rule 2(c) because the entire claim proposes multiple claims under multiple legal theories without specific factual allegations.

Assuming the prisoner intends Claims 1 and 2 to serve as a *Brady* allegation, the evidence outside the state-court record could only be considered if he satisfies § 2254(e)(2), which requires him to show that:

> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Supreme Court has held that the threshold determination under § 2254(e)(2) is whether the petitioner "failed to develop the factual basis" of his claim in the state court proceedings. *Williams*, 529 U.S. at 430.

Petitioner cannot satisfy the requirements of § 2254(e)(2) with respect to Exhibit A and its relation to a purported *Brady* claim. He does not identify "a new rule of constitutional law" that would allow consideration of Exhibit A, and the factual predicate of his *Brady* claim could "have been previously discovered through the exercise of due diligence." *See* § 2254(e)(2)(A)-(B).

11

Indeed, in his state post-conviction appeal before the TCCA, Mitchell argued that the State committed prosecutorial misconduct by failing to provide the name and criminal history of the confidential information prior to trial. *Mitchell*, 2022 WL 2348217, at *6.

Petitioner's motion to supplement the record is DENIED.

    **B.**  <u>Respondent's Motion to Dismiss and Petitioner's Motion to Amend.</u>

        **i.**  <u>Claims 1 and 2.</u>

The movant's first two claims are related to his general complaint about the prosecution's failure to reveal the identity of the confidential informant prior to trial and counsel's alleged ineffectiveness in failing to uncover the confidential informant's criminal history. Respondent argues in his motion to dismiss that Claims 1 and 2 are insufficiently pleaded and should be dismissed.

The Amended Petition avers in Claim 1 that the State committed prosecutorial misconduct by "not providing [the] defense with [the identity and] criminal history" of the confidential informant. (D.E. 11-1 at PageID 87.) It further alleges that the state trial court "erred [in] denying [Petitioner] a criminal background check [on the confidential informant] when the defense moved the court for it." (*Id*.)

In Claim 2, Mitchell maintains that trial counsel provided ineffective assistance by "not obtaining the name of the [confidential informant] prior to trial." (*Id*. at PageID 88.) He adds, however, that there "was no way trial counsel could investigate" because the State allegedly refused "to give up the [confidential informant's] name after repeated demands." (*Id*.) He alleges that it was "error for the [state post-conviction trial court] not to find ineffective [assistance of] counsel or prosecutorial misconduct." (*Id*.)

12

Though the district court must construe a pro se § 2254 petition liberally, it is the petitioner's responsibility to adequately plead his claims. *See* Habeas Rule 2(c) (requiring petitioner to state "all the grounds for relief" and "the facts supporting each ground"). "Dismissal under [the rule] is appropriate in cases where it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication." *Everett v. Leibach*, No. 2:15-cv-02099-MSN-tmp, 2019 WL 13275820, at *13 (W.D. Tenn. Nov. 18, 2019).

A complaint in an ordinary civil case need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Mayle v. Felix*, 545 U.S. 644, 655 (2005). "Notice pleading" as applicable to civil complaints "is not sufficient." *Id.* The rule is "more demanding" and requires the petitioner "to state facts that point to a real possibility of constitutional error." *Id.* Although pro se petitions are held to "less stringent standards than formal pleadings drafted by lawyers," a petitioner must still comply with Habeas Rule 2(c). *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Here, Claims 1 and 2 are insufficiently pleaded under Habeas Rule 2(c), despite the Court granting Mitchell an opportunity to amend his claims. He pleads multiple claims under multiple legal theories and leaves the Court to speculate as to the specific factual basis underlying these claims.[4]

---

[4]On post-conviction appeal, the TCCA considered and rejected claims that Mitchell's trial counsel was "ineffective for failing to learn the identity and criminal history of the [confidential informant] prior to trial and that the post-conviction [trial] court erred in finding [that Defendant] was not prejudiced by trial counsel's failure." *Mitchell*, 2022 WL 2348217, at *7. The TCCA agreed with the state post-conviction trial court that Mitchell had failed to show prejudice because he had "not established a reasonable probability that, had trial counsel impeached the [confidential informant] with the second degree murder conviction in addition to his prior felony drug convictions, the outcome of the trial would have been different." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Mitchell's claim that "the State committed prosecutorial misconduct by failing to provide

13

The inmate's motion for leave to file a second amended petition adds factual allegations, but the proposed Claims 1 and 2 are substantially similar to the Amended Petition. (*Compare* D.E. 31 *with* D.E. 11-1.) He still complains about the prosecution's failure to "give up the name" of the confidential informant prior to trial so that defense counsel could investigate his criminal history. (D.E. 31 at PageID 2338.) Petitioner now claims, however, that the confidential informant's criminal history constituted "impeachment evidence," and that the prosecution's failure to disclose such evidence violated *Brady*. (*Id*. at PageID 2342.) The proposed Claims 1 and 2 can most liberally be construed as raising a claim of prosecutorial misconduct under *Brady*.

On post-conviction appeal before the TCCA, Mitchell argued that "the State committed prosecutorial misconduct by failing to provide the name and criminal history of the [confidential informant] prior to trial." *Mitchell*, 2022 WL 2348217, at *6. The TCCA deemed the issue waived because Defendant could have, but did not, raise the issue of prosecutorial misconduct on direct appeal. *Id*. at *7.

When a state procedural rule prevented the state courts from reaching the merits of a

---

the name and criminal history of the [confidential informant] prior to trial" was deemed waived by the TCCA because Defendant could have, but did not, raise the issue of prosecutorial misconduct on direct appeal. *Id*. at *6.

Even if the Court were to parse out the multiple claims included in Claims 1 and 2 of the Amended Petition and consider them in isolation, despite Petitioner's failure to support his claims with sufficient factual allegations, he would not be entitled to relief. Specifically, he fails to show that the TCCA's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts" based on evidence presented in state court. § 2254(d)(1)-(2).

Petitioner's remaining claim that the state trial court "erred [in] denying [Petitioner] a criminal background check [on the confidential informant] when the defense moved the court for it," (D.E. 11-1 at PageID 87), is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

14

petitioner's claim, "that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977)). The Sixth Circuit applies a four-part test to determine whether a habeas claim has been procedurally defaulted due to a petitioner's failure to comply with a state procedural rule. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The *Maupin* test requires the Court to consider: (1) whether "there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule," (2) "whether the state courts actually enforced the state procedural sanction," (3) "whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim," and (4) whether the petitioner has demonstrated "cause" for failure to follow the procedural rule and was "actually prejudiced" by the alleged constitutional error. *Id.* (some internal quotation marks omitted).

"To determine whether a state procedural rule was applied to bar a habeas claim, [the court is to] look to the last reasoned state court decision disposing of the claim." *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (internal quotation marks omitted). There must have been "unambiguous state-court reliance on a procedural default" in order to limit federal court review of the claim. *Id*. at 561.

Here, the first *Maupin* factor has been satisfied. The TCCA unambiguously relied on Tennessee Code Annotated § 40-30-106(g) in declining to review the issue of prosecutorial misconduct on the merits. *See Mitchell*, 2022 WL 2348217, at *7. Under that procedural rule, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" Tenn. Code Ann. § 40-30-106(g). The procedural rule applies to

15

Mitchell because he could have, but did not, raise his issue of prosecutorial misconduct before the TCCA on direct appeal. *See Mitchell*, 2022 WL 2348217, at *7. The second *Maupin* factor has also been satisfied, as the TCCA enforced § 40-30-106(g)'s procedural rule. *See id.*

The third requirement, that the state procedural rule be an "adequate and independent" state ground, focuses on "the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Maupin*, 785 F.2d at 138. The adequacy of a state procedural rule "is itself a federal question." *Lee v. Kemna*, 534 U.S. 362, 375 (2002). "Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal claim." *Id*. at 376 (internal quotation marks). The TCCA's application of § 40-30-106(g) in Mitchell's post-conviction appeal was "independent of the federal question." *See Lee,* 534 U.S. at 375 (emphasis omitted). The TCCA only addressed waiver and declined to address the merits of his claim of prosecutorial misconduct. *See Mitchell*, 2022 WL 2348217, at *7. The TCCA also routinely applies § 40-30-106(g)'s procedural rule in declining to review the merits of claims presented for the first time on post-conviction appellate review. *See, e.g.*, *Vargas v. State*, No. M2019-00620-CCA-R3-PC, 2020 WL 919250, at *10 (Tenn. Crim. App. Feb. 26, 2020); *Carroll v. State*, No. M2017-01075-CCA-R3-PC, 2018 WL 5793571, at *6 (Tenn. Crim. App. Nov. 5, 2018). Moreover, the Sixth Circuit has held that Tennessee's waiver provision is an independent and adequate state rule that is regularly enforced. *Cone v. Bell*, 243 F.3d 961, 969 (6th Cir. 2001), *overruled on other grounds by Bell v. Cone*, 535 U.S. 685 (2002). The third *Maupin* factor is satisfied.

As to the fourth *Maupin* factor, Petitioner offers no argument that his procedural default of the claim of prosecutorial misconduct should be excused. He did not file a reply to the State's

16

response to his motion to file a second amended petition.[5] Mitchell has likewise not shown that failure to review his *Brady* claim would result in a "fundamental miscarriage of justice." *See Schlup*, 513 U.S. at 315.

The proposed amendment, reframing Claims 1 and 2 to allege a claim of prosecutorial misconduct under *Brady*, is procedurally defaulted because the TCCA relied on an "adequate and independent" state procedural rule in deeming the issue waived and declining to reach the merits. *See Maupin*, 785 F.2d at 138. Petitioner cannot overcome the procedural default.

"A court need not grant leave to amend . . . where amendment would be futile." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (internal quotation marks omitted). A proposed amendment is futile if "the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). Amendment would be futile in the context of a habeas petition where the petitioner's claims are procedurally barred. *Wiedbrauk v. Lavigne*, 174 F. App'x 993, 1000 (6th Cir. 2006).

Because further amendment of the operative § 2254 petition to reframe Claims 1 and 2 would be futile, the motion to amend those claims is DENIED. Claims 1 and 2 as alleged in the Amended Petition are, as discussed above, improperly pleaded under Habeas Rule 2(c). The Court therefore GRANTS Respondent's motion to dismiss and DISMISSES Claims 1 and 2 with

---

[5]The inmate filed a reply to Godfrey's response to a show cause order entered by the Court on September 4, 2025. (*See* D.E. 39.) The Court entered the show cause order after Respondent failed to file a response to Petitioner's motion for leave to file a second amended petition. (D.E. 35.) Mitchell argues in his reply that "[t]he State did not timely respond to the Court[']s order directing [R]espondent to show cause." (D.E. 39 at PageID 2373.) But Respondent filed his response to the Court's show cause order on the day the order was entered, explaining that he missed the response deadline "[d]ue to an unintentional internal administrative error." (D.E. 36 at PageID 2357.) The Court granted Respondent's request to late-file his response and ordered Petitioner to reply to the response "no later than September 18, 2025." (D.E. 37 at PageID 2360.) The movant's request for a "ruling in [his] favor due to the State's procedural default" is DENIED. (*See* D.E. 39 at PageID 2373.)

prejudice for failure to state a claim to relief.

      **ii.** <u>Claim 3.</u>

Petitioner alleges that trial counsel was ineffective "prior to trial and after trial for not investigating all possible defenses[.]" (D.E. 11 at PageID 75.) In particular, he insists that trial counsel "refused to investigate" the confidential informant's identity and criminal history prior to trial. (D.E. at 11-1 at PageID 90.) In response, Godfrey submits that Claim 3 is procedurally defaulted and barred from habeas review.[6]

Mitchell complained of trial counsel's alleged failure "to conduct a proper background investigation into the State's confidential informant" in the second amended petition filed by his appointed post-conviction counsel, (D.E. 22-19 at PageID 1456), but he elected to proceed on his pro se petitions and instructed the state post-conviction trial court not to consider the counseled petition. He did not raise a similar claim that trial counsel failed to investigate "all possible defenses" in his initial and amended pro se petitions.[7] Tennessee's post-conviction procedural law would bar any attempt at proper exhaustion. *See* Tenn. Code Ann. § 40-30-102(a), (c). Because Petitioner no longer has an available state court remedy to properly exhaust his claim, it is

---

[6]Petitioner's motion to amend also restates Claim 3 and includes additional supporting facts and legal authority. Because Claim 3 is procedurally defaulted and Mitchell cannot overcome the procedural default, the motion to amend is DENIED as it relates to Claim 3 because amendment would be futile. *See Wiedbrauk*, 174 F. App'x at 1000.

[7]As discussed, Mitchell argued in his post-conviction appeal before the TCCA that trial counsel was ineffective for failing to learn the confidential informant's identity and complete criminal history prior to trial. *Mitchell*, 2022 WL 2348217, at *7. The TCCA affirmed the denial of habeas relief on this claim based on Defendant's failure to demonstrate prejudice under *Strickland*. (*Id*.) This claim is different from the instant claim that trial counsel failed to investigate "all possible defenses," including an inquiry into the confidential informant's criminal history. (*See* D.E. 11 at PageID 75.) Nonetheless, TCCA's decision on the claim Mitchell raised in his post-conviction appeal did not contradict *Strickland* or involve an unreasonable application of the prejudice prong, and Mitchell does not argue otherwise. *See* § 2254(d)(1).

18

procedurally defaulted. *See Coleman*, 501 U.S. at 731-32.

The prisoner makes no attempt to argue cause and actual prejudice to excuse his procedural default; nor does he argue that this claim should be exempted from the procedural bar based on his innocence. *See House*, 547 U.S. at 536; *see also Schlup*, 513 U.S. at 315. As such, Respondent's motion to dismiss Claim 3 is GRANTED and the claim is DISMISSED as procedurally defaulted.

## APPELLATE ISSUES

No § 2254 petitioner may appeal without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *see Dennis v. Burgess*, 131 F.4th 537, 539 (6th Cir. 2025). A petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the district court denies relief on a procedural ground without reaching the underlying constitutional claim, a COA should issue when the petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not debate the Court's resolution of Petitioner's claims, the Court DENIES a COA.

A party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). If the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal in forma pauperis ("IFP"), the prisoner must file his motion to proceed IFP in the appellate court. *See* Fed. R. App. P.

24(a)(4)-(5).  For the same reasons the Court denies a COA, the Court CERTIFIES that any appeal would not be taken in good faith.  Leave to appeal IFP is DENIED.[8]

    IT IS SO ORDERED this 25th day of September 2025.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE

---

[8]If Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed IFP and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the date of entry of this order.  *See* Fed. R. App. P. 24(a)(5).